## McARTHUR v. MYGATT.

PATENTS; INTERFERENCE; BURDEN OF PROOF; DILIGENCE; INTERFERENCE
IN FACT.

1. Where one of the parties to an interference was the first to conceive, but the last to reduce to practice, the burden is on him to show diligence just before and subsequent to the date when the other party entered the field by disclosing the invention and filing an application, unless he is excused because of poverty or other extenuating circumstances.

2. Lack of diligence by a party to an interference, who, though the first to conceive, was the last to reduce to practice, is not excused by claims of financial embarrassment, where it appears that he was financially able to pursue his invention, but preferred to enlarge another business he was engaged in, and that subsequent financial difficulties did not occur until after the filing date of his adversary.

3. On an appeal in an interference case, this court, in answer to the contention by the appellant that there was no interference in fact, stated that the matter was determined by the tribunals of the Patent Office, and with their conclusion the court agreed.

No. 491.    Patent Appeals.    Submitted May 14, 1908.    Decided June 2, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.            *Affirmed.*

The facts are stated in the opinion.

*Mr. Vernon M. Dorsey* and *Mr. Thomas Ewing, Jr.,* for the appellant.

*Mr. Fenelon B. Brock* and *Mr. Howard Taylor* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding, affirming the decision of the Board of Examiners-in-Chief, which, in turn, affirmed the decision of the Examiner of Interferences, awarding priority of invention to appellee, Otis A. Mygatt.

The invention involved in this controversy is a combined lamp shade and reflector, and is embraced in the following counts:

"1. A shade and reflector composed of a single piece of glass and having a neck for engaging the walls of a chimney or electric bulb, the inside of said reflector being smooth, the outer surface of said reflector being substantially covered with series of integral prisms calculated to reflect the light rays back into the reflector and out at the open mouth thereof, those of one series being raised in step-like formation above those of the adjacent series.

"2. A reflector composed of a single piece of glass having a smooth inside, and an exterior surface covered with a series of light-reflecting prisms, the different series being superimposed relatively above one another in step-like formation.

"3. A reflector having series of reflecting prisms disposed along its outer surface, those of one series being disposed along a curved surface and removed a suitable distance from the surface of disposition of the next adjacent series."

Appellee is the senior party, having filed his application on March 24, 1904. The application of appellant, Alexander P. McArthur, was not filed until September 19, 1904, but, through inadvertence, was allowed to eventuate into a patent on March 14, 1905. Appellee then amended his application by inserting

claims (the counts of the issue) corresponding to certain claims in appellant's patent, and requested that an interference be declared. This was accordingly done. A motion was filed by appellant to dissolve the interference on the ground that appellee had no right to make the claims, and this motion was granted by the Primary Examiner. On appeal, the Board of Examiners-in-Chief reversed the decision.

Appellee testified that he conceived the invention in issue and made sketches thereof as early as September 30, 1903, but this is not corroborated. The testimony of Bartlett, attorney for appellee, however, clearly establishes that he received from the latter, on March 1, 1904, sketches disclosing the invention in issue, from which his application drawings and papers were prepared.

Appellant testified to conception in February, 1902, but no corroborating evidence was offered. It appears, however, that in July, 1903, he discussed with one Unger the invention in controversy, and showed him a wooden pattern. Unger, upon being shown two sketches (Exhibits Nos. 6 and 7), which disclose the invention in issue, stated that he recognized Exhibit No. 7 as a sketch of the wooden pattern, and that he saw something similar, either in wood or on paper, to Exhibit No. 6. The witness Lopez testified that appellant showed him a drawing (Exhibit No. 3) and a wooden model (Exhibit No. 4), which show the construction of the prisms one above the other, in August, 1903. Appellee has attempted to show by the testimony of the witness Lenshutz that the wooden model has been altered since the declaration of interference. It appears that this witness saw this model in February, 1903, and that he does not believe the lower cuts were on it at that time. However, even if the witness was correct in his statement, it does not follow that the model was not in its present condition when Lopez saw it in August, 1903. There is also another set of prisms on this model, which are not referred to by the witness. The testimony of these two witnesses is deemed sufficient to establish conception and disclosure of the invention by appellant as early as the summer of 1903.

Appellant has, however, failed to establish a reduction to practice prior to the filing date of his application. Although the first to conceive, he was the last to reduce to practice; and therefore it is incumbent upon him to show diligence just before and subsequent to March 1, 1904, the date on which appellee entered the field, unless he can be excused because of poverty or other extenuating circumstances. Appellant admits taking no steps in this direction until April 21, 1904, when he gave his attorney instructions to prepare an application, which was accordingly done and the papers sent him a few days after the letter was written. The application, however, was not filed until September 19, 1904.

Appellant attempts to excuse his lack of diligence by the statement that he had intended to make molds and file papers at or about the time he made the wooden model in June, 1903, but his financial condition was such that it was impossible for him to reduce the invention to practice until, in September, 1904, he "cleaned up in gross sales about $1,000 in cash." It seems, however, from his own testimony, that he preferred to enlarge his old business, rather than perfect his new invention. His gross income amounted to about $200 a month, and in December, 1903, he acquired a second office at a monthly rental of $35. He also sought to excuse his delay by the fact that he was seriously embarrassed by the defaulting of one Wharton, an employee; but this did not occur until the summer (the month is not given) of 1904. This was after appellee's filing date. It must be held that this evidence does not excuse appellant's lack of diligence.

It is contended by counsel for appellant that there is no interference in fact. This matter has been determined by the tribunals of the Patent Office, and with their conclusion we agree.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required. *Affirmed.*